IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA, )
)
                Plaintiff, )
)
v. )   Case No. 19-40067-HLT
)
VINCENT MULLER and )
ANNE-MARIE DUBE, )
)
                Defendants. )
)
_____)

## MEMORANDUM AND ORDER

This matter comes before the Court on defendants' motion to suppress evidence (Doc. # 43).[1] The Court conducted an evidentiary hearing on February 3, 2020. In addition, after the hearing, the parties were permitted to submit additional exhibits and to file additional briefs. Based on the evidence and counsel's arguments, the Court concludes that there is no basis for suppression of evidence here, and the Court therefore **denies** defendants' motion.[2]

---

[1] The motion was filed on behalf of defendant Muller, and defendant Dube joined the motion (Doc. # 44).

[2] This case is assigned to the Hon. Holly L. Teeter. Because of a scheduling conflict, the undersigned agreed to conduct the hearing and to rule on the motion (with the consent of both parties).

## I. Facts

On August 8, 2019, C.D. Rule, an officer of the Kansas Highway Patrol, was traveling westbound in his vehicle on I-70 highway in Wabaunsee County, Kansas. Officer Rule observed defendants' vehicle (a Nissan Sentra) traveling close behind a pickup truck while eastbound on that highway. Officer Rule turned around to follow defendants, and he eventually activated his emergency lights and pulled them over. He proceeded to issue defendants a warning for following another vehicle too closely in violation of K.S.A. § 8-1523. The officer talked with defendants, who had recently arrived in the United States from Canada, about their travel plans, and he eventually asked them for consent to search their vehicle, but they refused to consent. The officer nevertheless continued to detain defendants to allow his canine to sniff the vehicle. The canine alerted to the presence of narcotics, and a subsequent search revealed a suitcase containing 99 pounds of cocaine. Defendants have now been charged with possession with intent to distribute cocaine. By the present motion, defendants request that the evidence obtained from their vehicle be excluded.

## II. Analysis

Defendants seek to suppress evidence that they argue was obtained as a result of a seizure in violation of the Fourth Amendment. *See Wong Sun v. United States*, 371 U.S. 471, 485 (1963) (exclusionary rule). The Court addresses in turn defendants' three arguments for suppression.

## A. *Traffic Violation*

Defendants first argue that Officer Rule's initial stop of the vehicle was not justified. The officer testified that he stopped the vehicle because he observed a traffic violation. "A traffic stop is valid under the Fourth Amendment if the stop is based on an observed traffic violation or if the police officer has reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring." *See United States v. Callarman*, 273 F.3d 1284, 1286 (10th Cir. 2001) (quoting *United States v. Botero-Ospina*, 71 F.3d 783, 878 (10th Cir. 1995)).

> Reasonable suspicion is a particularized and objective basis for suspecting the person stopped of criminal activity. When determining whether an officer possessed a reasonable, articulable suspicion, the subjective motivations of an arresting officer are irrelevant.

*See Callarman*, 273 F.3d at 1286 (internal quotations and citations omitted).[3]

Officer Rule testified that he observed a violation of K.S.A. § 8-1523(a), which states as follows: "The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicles and the traffic upon and the condition of the highway." *See id.* Defendants first argue that the video taken from the officer's vehicle does not show defendants following any other vehicle too closely. The officer testified, however, that the system records only the two minutes immediately prior to the activation of the emergency lights, and that the violation

---

[3] Defendants argue that a probable cause standard should apply to a stop based on a traffic violation, but in *Callarman* the Tenth Circuit addressed and rejected that same argument. *See Callarman*, 273 F.3d at 1286-87. Moreover, in this case, the officer's observation provided probable cause that a violation had occurred.

3

occurred before the start of the recording. Thus, the fact that the video does not show the violation does not mean that it did not occur.

Defendants also argue that Officer Rule misstated the applicable standard when he told defendants, in response to their inquiry, that they should drive three seconds or 400 feet behind other vehicles. Defendants note that the Tenth Circuit has approved a two-second rule as supporting reasonable suspicion to effect a traffic stop under Section 8-1523(a). *See United States v. Hunter*, 663 F.3d 1136, 1143 (10th Cir. 2011). As the Government notes, the Tenth Circuit has also upheld stops under this statute based on an officer's observation of the vehicle's speed and the distance between vehicles. *See United States v. Vercher*, 358 F.3d 1257, 1262-63 (10th Cir. 2004). In this case, Officer Rule testified that he also considers a standard of one car length for every 10 miles per hour of speed. The officer further testified that he observed defendants' vehicle traveling at a high rate of speed within two car lengths of the pickup truck; that such a distance was not reasonable in this case because defendants would not have had sufficient time to react safely if the truck slowed or stopped; and that defendants violated the statute under either the two-second standard or the car-lengths standard.

The fact that the officer used a different standard in talking to defendants does not mean that he necessarily applied the wrong standard himself. The officer testified that he always tells drivers to use three seconds so that they drive even more cautiously than the statute allows, and that defendants had been following within one second behind the truck. The officer credibly testified that he observed facts that would constitute a violation of a traffic law. Based on that testimony, the Court concludes that the officer's stop of

4

defendants' vehicle was justified by a reasonable suspicion of a violation, and the Court therefore rejects this basis for suppression of the evidence.

### B. *Reasonable Suspicion to Conduct the Dog Sniff*

Defendants next argue that, even if the initial stop was valid, Officer Rule did not have the requisite reasonable suspicion at the time that the officer nevertheless detained them (after defendants had refused to consent to a search) to allow for the dog sniff. "When determining whether reasonable suspicion exists, [the court looks] to the totality of the circumstances to see whether the officer had a particularized and objective basis for suspecting legal wrongdoing." *See United States v. Bradford*, 423 F.3d 1149, 1157 (10th Cir. 2005) (internal quotations and citation omitted). The totality of the circumstances may provide reasonable suspicion even if each factor standing alone may have had an innocent explanation. *See id.*

The Court concludes that the detention was supported by reasonable suspicion in this case. Officer Rule testified credibly to a number of factors that contributed to his suspicion, as follows. First, when the officer pulled alongside to look into defendants' vehicle (before activating his emergency lights), Ms. Dube, the driver, had her arms locked with her hands in the ten-and-two position, she did not look over at the officer, and she appeared stressed or nervous. Mr. Muller, the passenger, also did not look over at the officer, and he had his hands to his mouth as if talking to Ms. Dube. In the officer's experience, it is unusual for occupants not to acknowledge him or look over when he pulls alongside.

5

Second, after Officer Rule activated his emergency lights behind defendants' vehicle, Ms. Dube pulled over to the side at a slower rate than is common. At the same time, Mr. Muller was moving about the center of the vehicle; the officer found that activity unusual, as a passenger would ordinarily wait until the vehicle was stopped, and it was consistent with a person trying to hide something in the vehicle.

Third, both defendants appeared very nervous when the officer spoke with them after pulling them over. Ms. Dube's hands were shaking, her chest was rising and falling quickly with rapid breaths, she looked down and did not make eye contact, and a red rash developed on her neck over the course of the encounter. Mr. Muller's hands shook, and he continually fidgeted in his seat. Mr. Muller also spoke over and answered for Ms. Dube, even though she appeared to speak English[4], which the officer found unusual, as the driver is ordinarily the person with whom he converses. Defendants' nervous behavior continued even after they were told that they would merely receive a warning for the traffic violation, and even after the officer had spent time in his own vehicle and returned to issue the warning.

Fourth, the officer observed that the vehicle had trash and food and drink containers in the front and back seats. He testified that in his experience and training such a lived-in appearance was consistent with vehicles used by drug traffickers who do not leave their vehicle for extended periods.

---

[4] Apparently, Ms. Dube's first language is French as she used the assistance of a French-English interpreter at the hearing

Fifth, Officer Rule observed three cell phones in the car, one of which appeared similar to the type of "burner" phone that drug traffickers often use.

Sixth, defendants' documents indicated that they had rented the vehicle only three days before in Los Angeles, which meant that they had traveled approximately 1500 miles in less than 72 hours, and that the agreement called for the vehicle to be returned the next day. The officer found that rate and length of travel suspicious in light of defendants' explanation that, after flying from Canada to California, they were sightseeing across the United States. Defendants stated that the rental could be extended, but such extensions are common for drug traffickers, in the officer's experience. The officer also found it unusual that the rental agreement did not include any drop-off location.

Seventh, the officer found defendants' explanations of their travel plans to be suspicious. Defendants initially stated that they had traveled from Los Angeles to Utah and then were on their way to Kansas City. After Officer Rule issued their warning, he again asked about their travel plans, and after repeating that they had been to Utah, Mr. Muller stated that they "then" went to Las Vegas to visit friends. The officer found that unusual for two reasons: it was unlikely that defendants would have visited Utah first and then doubled back a great distance to visit Las Vegas before resuming the trip to Kansas City; and their traveling such a great distance in three days did not allow much time to spend with friends in Las Vegas. Defendants did not appear confident with respect to their travel plans, they did not know where or when they would return the car, and they did not know how long their trip would last before they returned home to Canada. In the officer's experience, it was unusual for a foreign traveler not to have more concrete plans.

Moreover, having no definite drop-off time or place is consistent with the behavior of drug traffickers who often wait for a call supplying such information.

Defendants argue that these observations by the officer could have innocent explanations. They suggest, for example, that the ten-and-two position is the preferred way to drive; that defendants may not have seen the officer pull alongside; that they pulled over reasonably quickly; that nervousness would not be unusual after being pulled over in a foreign country; that the trash was not unusual; that they might innocently have had three cell phones; that the rental could easily have been extended; that they may simply have wanted to travel about with no concrete plans; and that Mr. Muller did not necessarily mean that they had traveled to Utah before traveling to Las Vegas. The Court must consider the totality of the circumstances, however, and all of these factors taken together, including defendants' extremely nervous behavior and the general inconsistency and lack of certainty about their plans, provided a reasonable suspicion of criminal activity. *See, e.g.*, *Bradford*, 423 F.3d at 1157-58 (even though each factor may have had an innocent explanation standing alone, the totality of the circumstances – including a cellular phone, fast-food wrappers, physical manifestations of fright, and evasive and conflicting answers concerning travel plans – provided reasonable suspicion). Accordingly, the Court rejects this basis for exclusion of the evidence.

### C. *Extension of Stop to Review Rental Agreement*

In their post-hearing brief, defendants make a new argument for suppression. They argue that Officer Rule improperly extended the stop beyond the necessary duration when he reviewed the rental agreement during the three minutes in his own vehicle in which he

entered information into his computer system for a warning ticket. Officer Rule testified that he did not yet have a reasonable suspicion at that point (before his consensual discussion in which talked to defendants again about their travel plans). Essentially, defendants argue that the officer was permitted to type up the warning while in his car, but he was not permitted also to review the rental agreement.

The Supreme Court addressed this issue of the duration of a traffic stop in *Rodriguez v. United States*, 575 U.S. 348 (2015). The Court reiterated that "the tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's mission – to address the traffic violation that warranted the stop and to attend to related safety concerns." *See id.* at 354 (internal quotations and citations omitted). The stop may last no longer than is necessary to effectuate the purpose of the stop, and authority for the seizure therefore ends when tasks tied to the traffic violation are or reasonably should have been completed. *See id.* At the same time, certain unrelated investigations or checks are permitted if they do not lengthen the roadside detention. *See id.* at 354-55. The Court further stated:

> Beyond determining whether to issue a traffic ticket, an officer's mission includes ordinary inquiries incident to the traffic stop. Typically such inquiries involve checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance. These checks serve the same objective as enforcement of the traffic code: ensuring that vehicles on the road are operated safely and responsibly.

*See id.* at 355 (internal quotations and citations omitted).

The Court rejects this argument by defendants. First, the Court cannot say that the officer's review of the rental agreement was unrelated to the purpose of the stop here.

9

Defendants gave Officer Rule the rental agreement with their driver's licenses, and the officer was permitted to review those documents. Moreover, the rental agreement would ordinarily contain information needed for the warning ticket that the officer was entering into his computer, such as information about the stopped vehicle, and the officer testified that he did use the rental agreement to enter the information for the warning ticket. Defendants concede that the officer spent only three minutes in his vehicle, during which time he keyed in the information for the warning ticket. The officer testified that he reviewed other parts of the rental agreement, but there is no evidence that any such review unnecessarily prolonged the stop more than mere seconds. In addition, the Tenth Circuit has agreed with other circuits that the permissible scope of a routine traffic stop is not exceeded by questions about the driver's travel plans, *see Bradford*, 423 F.3d at 1156 (citing *United States v. Williams*, 271 F.3d 1262, 1267 (10th Cir. 2001)), and a routine review of the rental agreement that was provided by the driver similarly falls within the scope of permissible checks. Finally, defendants have not cited any authority suggesting that such a review is impermissible. Accordingly, the Court rejects this basis for exclusion argued by defendants, and the Court denies defendants' motion to suppress in its entirety.

IT IS THEREFORE ORDERED BY THE COURT THAT the motion to suppress evidence filed by defendant Muller (Doc. # 43), in which defendant Dube joined (Doc. # 44), is hereby **denied**.

IT IS SO ORDERED.

Dated this 28th day of February, 2020, in Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge